UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT RAY YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-00969-DGK |
| | ) | |
| LIZ HAGER-MACE and | ) | |
| AMY COPELAND, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case arises out of Plaintiff's termination from a housing voucher program. Pro se Plaintiff initiated this lawsuit after the Court granted his motion to proceed in forma pauperis (Doc. 1). After the Court denied Plaintiff's motion to appoint counsel, Plaintiff filed a Notice of Refiling (Doc. 23), which the Court construed as an amended complaint (Doc. 25).

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 32) and Plaintiff's response (Doc. 33). For the following reasons, Defendants' motion is GRANTED.

### **Background[1]**

Plaintiff is a homeless, African-American man who suffers from mental and physical disabilities. Defendant Liz Hagar-Mace is the housing director at the Missouri Department of Mental Health ("DMH"), and Amy Copeland ("Copeland") is an affordable housing consultant at the DMH, administering the Shelter Plus Care ("SPC") program.

In September 2014, the DMH approved Plaintiff to be a participant in its SPC program. SPC is a tenant-based rental housing assistance voucher program operated for the benefit of

---

[1] Plaintiff did not provide a statement of facts in his response, nor does he controvert Defendants' statement of facts. As such, the Court adopts the facts from Defendants' brief and includes facts from Plaintiff's amended complaint where they are consistent.

homeless persons who are disabled by serious mental illness, substance abuse issues, or other disabilities. To be eligible for the SPC program, applicants must have a recognized disability, have very low income, and meet the HUD definition of homeless. As such, all SPC participants are disabled. Additionally, Defendants state 70-75% of SPC program participants are African-American. SPC offers two types of vouchers, one-time and month-to-month.

In order to receive an SPC housing voucher, a recipient must be referred to DMH by an independent agency. SPC program guidelines require the independent agency to assign a case manager to the SPC participant who monitors the participant's compliance with the program. Participants are responsible for finding their own rental housing, but then the SPC program pays a portion of the participant's rent, between 70 and 100%. As part of the SPC terms, participants agree to abide by the terms of their lease and other household obligations.

In this case, Tri-County Mental Health Services referred Plaintiff to the SPC program. On September 23, 2014, he was granted an initial one-time housing voucher for thirty-days. Plaintiff signed documents describing the SPC program's rules and obligations, and his rights under the program. Plaintiff subsequently located housing, and on October 24, 2014, signed a one-year lease.

Throughout Plaintiff's lease, management for the rental complex where Plaintiff was living complained to DMH about Plaintiff, claiming he violated the terms of his lease and his SPC household obligations, including cutting Google Fiber wires, not letting service people access the apartment, and threatening to change the locks on the apartment. During the lease, Plaintiff complained about the conditions of his apartment, including finding bugs in the apartment and his belief that the water was poisoned. Management for the apartment complex

decided not to renew Plaintiff's lease, however it permitted him to remain in the same apartment on a month-to-month basis.

On August 21, 2015, DMH sent Plaintiff a letter notifying him that he was out of compliance with the requirements of the SPC program, that his SPC benefits were in jeopardy of being terminated, and informing him of a hearing set to discuss his SPC housing benefits.

The voucher hearing was held on September 3, 2015. Plaintiff appeared at the hearing with his case manager from Tri-County Mental Health Services. Copeland was also present at the hearing and discussed the reasons Plaintiff was being terminated from the SPC program. Plaintiff responded that he believed he was being discriminated against and denied his civil rights. Plaintiff also states Copeland "made a racial reply" to him. (Doc. 23 at 4).

On October 12, 2016, Plaintiff filed a discrimination complaint with the Missouri Commission on Human Rights ("MCHR") against DMH. In this complaint he alleged DMH terminated him from the SPC program because of his race and disability. While Plaintiff's housing voucher was supposed to terminate in October 2015, DMH continued to provide SPC housing assistance while MCHR investigated Plaintiff's complaint.

On January 6, 2016, SPC granted Plaintiff a one-time housing voucher to assist Plaintiff with moving to a new apartment. This voucher was valid for thirty-days and expired on February 5, 2016. One-time vouchers are granted only for extenuating circumstances such as hospitalization. Plaintiff did not use his one-time voucher and it expired. On February 5, 2016, Plaintiff's case manager requested an extension the housing voucher but DMH declined because it did not find an extenuating circumstance.

On February 26, 2016, Plaintiff filed a second discrimination complaint with MCHR against DMH stemming from the denial of the extension of his one-time voucher. Plaintiff again

3

alleged DMH discriminated against him based on his race and disability. He also alleged the denial was in retaliation for his first complaint with MCHR. MCHR completed its investigation determining it "was unable to conclude that the information obtained established violations of the Missouri Human Rights Act." (Doc. 32-1 at 22).

In March 2016, Plaintiff withdrew his first MCHR complaint. In that same month, DMH discontinued Plaintiff's housing assistance because it received notice from Plaintiff's landlord that he had vacated the apartment.

Plaintiff filed this lawsuit because of Defendants' decision to terminate his SPC month-to-month housing assistance. He alleges this decision was the result of discrimination based on his race, sex, and disability asserting claims under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq*. and the Americans with Disabilities Act ("ADA"),[2] 42 U.S.C. §§ 12101, *et seq*. Plaintiff seeks punitive and actual damages.

**Standard**

Because Plaintiff is pro se, the Court is bound to liberally construe his filings in order to do substantial justice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, a litigant's pro se status does not excuse him from compliance with the Federal Rules of Civil Procedure or Local Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

In reviewing a summary judgment motion, the Court is bound to resolve any doubt as to the existence of any material fact against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court must scrutinize the evidence presented in the light most

---

[2] Construing Plaintiff's allegations in his amended complaint liberally, the Court found he asserted a claim under the ADA. *See* (Doc. 25 at 2); Am. Compl. at 8 (Doc. 23). The amended complaint stated he was seeking protection under the ADA because he suffers from traumatic brain injury and mental disabilities. Am. Compl. at 8. Plaintiff makes no other reference to the ADA in his amended complaint or in his response to this motion. Because the FHA provides protection against disabled individuals by making it illegal to discriminate in providing housing, 42 U.S.C. § 3604(f)(1), the Court only considers a claim under the FHA.

favorable to the non-moving party and accord to it the benefit of every reasonable factual inference. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986). A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## Discussion

Plaintiff alleges Defendants discriminated against him because he is an African-American male with mental and physical disabilities.

"Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). "Proof of discriminatory purpose is crucial for a disparate treatment claim." *Id.*; *see Dirden v. Dep't of Hous. & Urban Dev.*, 86 F.3d 112, 114 (8th Cir. 1996) ("A plaintiff must prove discriminatory intent to prevail on a claim under the FHA.").

"Summary judgment [of a disparate treatment claim] is warranted if the plaintiff cannot produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* burden-shifting framework." *Gallagher*, 619 F.3d at 831. "Absent direct evidence of discrimination, courts apply the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992). "Pursuant to that framework, the plaintiff must first make a prima facie showing of discrimination." *Id.* If a plaintiff establishes a

prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct. *Id.* The burden then shifts back to the plaintiff, who must rebut the defendant's proffered reason by showing that it is pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802.

The FHA prohibits discrimination against any person "in the provision of services or facilities" connected with the sale or rental of a dwelling, based on the person's disability, race, or sex. 42 U.S.C. § 3604(b), (f)(2).

There is no evidence in the record that Defendants' decision to terminate Plaintiff from the SPC program was motivated by discriminatory animus. Rather, the facts indicate the program serves only those who are disabled, and most participants are African-American. Because Plaintiff does not allege any direct evidence of discrimination based on these classifications, the Court will analyze his claims under the *McDonnell Douglas* framework.

To establish a prima facie case, Plaintiff must show that as a member of a protected class, Defendants did not offer the "same terms, conditions or privileges of rental under circumstances that give rise to a reasonable inference of unlawful discrimination." *Groteboer v. Eyota Econ. Dev. Auth.*, 724 F. Supp. 2d 1018, 1023 (D. Minn. 2010).

In this case, applying the *McDonnell Douglas* burden-shifting standard, Plaintiff must show Defendants terminated his housing voucher for a discriminatory purpose and if he does, then Defendants must show a non-discriminatory reason for that decision. Reviewing the facts in light most favorable to Plaintiff, the Court finds he has not made out a prima facie case for discrimination and even if he had, Defendants have articulated a non-discriminatory reason for their decision to terminate Plaintiff's housing voucher.

Plaintiff offers no specific factual allegations of discrimination apart from his conclusory allegation that Defendants committed an "unlawful act" and that Defendant Copland made a "racial reply" at his voucher hearing. (Doc. 23 at 3, 4). Plaintiff does not allege the specific words Copeland used in her "racial reply" or how those words were connected to Defendants' decision to terminate his housing benefits. Without more, Plaintiff has failed to offer any indirect evidence that would create a reasonable inference that a discriminatory intent motivated the decision to terminate his housing voucher. Thus, the Court cannot find Plaintiff has stated a prima facie case of discrimination to raise a presumption of illegality. *See also Gallagher*, 619 F.3d at 831 (finding evidence of a discriminatory motive "does not include stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself.").

Assuming Plaintiff did state a prima facie case of discrimination, Defendants have successfully stated a non-discriminatory reason for terminating his housing voucher. Defendants terminated his housing voucher because he was non-compliant with the program requirements and violated the terms of his lease. This reason is a non-discriminatory justification for the decision and sufficient to overcome Plaintiff's allegations of discrimination.

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment (Doc. 32) is GRANTED.

**IT IS SO ORDERED.**

Date:  December 14, 2017            /s/ Greg Kays
                                                            GREG KAYS, CHIEF JUDGE
                                                            UNITED STATES DISTRICT COURT